UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE W., | ) | No. ED CV 18-1431-PLA |
| Plaintiff, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) ) | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

I.

## PROCEEDINGS

Christine W.[1] ("plaintiff") filed this action on July 5, 2018, seeking review of the Commissioner's[2] denial of her application for Disability Insurance Benefits ("DIB"). On July 10, 2018, she filed a First Amended Complaint. [ECF No. 10.] The parties filed Consents to proceed

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

before a Magistrate Judge on August 1, 2018, and August 14, 2018. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on May 9, 2019, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.
## BACKGROUND

Plaintiff was born in 1967. [Administrative Record ("AR") at 126, 496.] She has past relevant work experience in the composite job of credit clerk and teller. [Id. at 495, 529.]

On February 28, 2011, plaintiff filed an application for a period of disability and DIB alleging that she has been unable to work since January 13, 2011. [Id. at 542; see id. at 124-30.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an ALJ. [Id. at 89-90.] A hearing was held on April 4, 2013, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [Id. at 45-72.] Plaintiff's husband also testified. [Id. at 65-71.] On May 16, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from January 13, 2011, the alleged onset date, through May 16, 2013, the date of the decision ("2013 Decision").[3] [Id. at 542-53.] Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on December 11, 2014. [Id. at 1-5.] Plaintiff then filed an action with this Court in case number ED CV 15-247-PLA, and on December 4, 2015, this Court remanded the matter. [Id. at 588-604; see also id. at 605-07 (Appeals Council Remand Order).] On December 19, 2016, a remand hearing was held before a different ALJ, at which time plaintiff again appeared represented by an attorney and testified on her own behalf. [Id. at 506-38.] A VE also testified. [Id. at 517-20, 527-36.] On May 3, 2018, the

---

[3] In the 2013 Decision, the ALJ determined that plaintiff had past relevant work experience as a financial service representative and as a waitress. [AR at 552.] Although no vocational expert ("VE") testified at the April 4, 2013, hearing, the ALJ stated that he "d[id] not believe the financial service representative position was performed at the sedentary exertional level," and found that "none of the past relevant work allow[ed] [plaintiff] to perform within the [RFC] stated above (which is the sedentary exertional level)." [Id.]

2

ALJ issued a decision again concluding that plaintiff was not under a disability from January 13, 2011, the alleged onset date, through December 31, 2016, the date last insured ("2018 Decision"). [Id. at 486-97.] At that time, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.984. This action followed.

## III.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-

Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

## B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 13, 2011, the alleged onset date, through December 31, 2016, her date last insured. [AR at 488.] At step two, the ALJ concluded that plaintiff has the severe impairments of chronic back pain syndrome, history of fusion in 2008; obesity; adjustment disorder with anxiety and depressed mood; and unspecified neurocognitive disorder.[4] [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id. at 489.] The ALJ further found that through the date last insured, plaintiff retained the residual functional capacity ("RFC")[5] to perform light work[6] as defined in 20 C.F.R. § 404.1567(b),[7] as follows:

---

[4] In the 2013 Decision, the ALJ determined that plaintiff had the severe impairments of degenerative arthrosis of the lumbar spine, status post left-sided laminectomy at the L5-S1 as of April 2008; was overweight; and alcohol abuse with depression. [AR at 544.]

[5] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[6] In the 2013 Decision, the ALJ determined that plaintiff retained the RFC to perform sedentary work and "can lift and/or carry no more than 10 pounds occasionally and frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; [and she] is limited to simple and repetitive tasks." [AR at 593.]

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of
(continued...)

> [She was] able to sit for 6 hours of an 8-hour workday and stand/walk 6 hours of an 8-hour workday. She was able to frequently handle and reach with each upper extremity. [She] was able to make simple work related decisions and perform jobs that could be learned on-the-job in 30 days or less. In addition, she could frequently interact with supervisors, co-workers, and the general public.

[Id. at 491.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that through the date last insured, plaintiff was unable to perform her past relevant work in the composite job of credit clerk and teller. [Id. at 495, 528-29.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "routing clerk" (Dictionary of Occupational Titles ("DOT") No. 222.687-022), as a "router" (DOT No. 222.587-038), and as a "marker" (DOT No. 209.587-034). [AR at 496, 531-36.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 13, 2011, through December 31, 2016, her date last insured. [Id. at 497.]

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) failed to comply with the law of the case/rule of mandate; (2) considered the mental impairment of record; and (3) considered the physical impairment of record. [JS at 4-5.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

A. **LAW OF THE CASE AND RULE OF MANDATE**

The ALJ in the 2013 Decision determined that plaintiff was unable to perform her past

---

[7](...continued)
performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

relevant work as a financial services representative[8] and had the RFC to perform sedentary work in that she can "lift and/or carry no more than 10 pounds occasionally and frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; [and she] is limited to simple and repetitive tasks." [AR at 546.] He did not take testimony from a VE; instead, he determined at step five, based on plaintiff's RFC and vocational factors, that although plaintiff was unable to perform the full range of sedentary work, her "additional limitations have little or no effect on the occupational base of unskilled sedentary work" and, therefore, "[a] finding of 'not disabled' is . . . appropriate under the framework of" 20 C.F.R. part 404, subpart P, appendix 2, § 201.25 (the "Grids"). [Id. at 40.] On appeal of the 2013 Decision to this Court, plaintiff only challenged the ALJ's evaluation of medical opinions pertaining to plaintiff's *mental* health, particularly the opinions of Robin Rhodes Campbell, Ph.D. and Sally Varghese, M.D. [Id. at 594; see also C.D. Case No. ED CV 15-247-PLA, ECF No. 18 at 4, 22-24.] Plaintiff did not challenge the ALJ's determination regarding her physical impairments or limitations.

In its December 4, 2015, Memorandum Opinion and Order remanding the 2013 Decision, this Court determined that the ALJ erred in his evaluation of the medical opinion evidence of plaintiff's mental limitations -- the only issue raised by plaintiff in that action. [AR at 594.] The Court set forth the scope of the remand proceedings as follows:

> First, the ALJ shall reassess plaintiff's RFC *in light of her "mild to moderate" impairment in concentration, persistence, and pace*. Second, the ALJ shall review the medical evidence of record *relating to plaintiff's mental health*, including, but not limited to, the reports of Dr. Campbell [AR at 414-18], Dr. Varghese [AR at 424-41], Dr. Weiss [AR at 447], and Dr. Shillito [AR at 480-81], and consider the effect, if any, of plaintiff's assessed difficulties in interacting with supervisors, coworkers, or the general public, or of plaintiff's difficulties in withstanding the stress and changes associated with an eight-hour workday and day-to-day work activities, on plaintiff's RFC. If the ALJ rejects these findings, the ALJ shall explain why significant and probative evidence was rejected. Finally, with the assistance of a vocational expert, if necessary, the ALJ shall determine whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform *given her RFC, including her mild to moderate difficulties in concentration, persistence, and pace,*

---

[8] At the 2016 hearing, the VE testified that he was unable to find a "DOT title of financial service representative," and that it appeared plaintiff "had a combination job that involved her being a bank teller and doing work with credit . . . at a light exertion level." [AR at 518, 529.]

7

*and any limitations in social functioning.*

[Id. at 603 (emphases added).] The Court also specifically stated that nothing in its Memorandum Opinion and Order was "intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work." [Id. at 603 n.12.]

Plaintiff contends that the ALJ in the 2018 Decision violated the law of the case doctrine and/or the rule of mandate when he expanded the scope of this Court's remand order "to include a reassessment of [physical] residual functional capacity in addition to reviewing medical evidence related to mental health." [JS at 7 (citing AR at 486).] She further argues that "[b]y finding that the Commissioner could not change the determination that [plaintiff] could not perform her past relevant light work, this Court precluded the ALJ from reassessing the [RFC] for the physical demands of work activity." [Id.]

Defendant responds that nothing in the Court's remand order "precluded the ALJ from reassessing" plaintiff's physical RFC and, in fact, defendant notes that the Order stated "that the ALJ 'shall reassess'" plaintiff's RFC. [Id. at 8.] Defendant submits that "[o]rdering considerations as to mental limitations did not preclude reassessment of physical limitations," and that the only finding specifically mentioned by the Court as "not an 'outstanding issue[]' to 'be resolved' was the step-four finding that Plaintiff could not do past relevant work." [Id. (citations omitted).] Defendant further argues that the ALJ resolved "step four in Plaintiff's favor -- i.e., in full compliance with the Court's directive." [Id.] Thus, according to defendant, "the Court did not 'preclude[] the ALJ from reassessing the [RFC] for the physical demands of work activity,'" and, therefore, the ALJ did not expand the scope of the remand. [Id. at 9.]

**1.     Law of the Case**

Under the law of the case doctrine, a court is precluded from revisiting issues which have been decided -- either explicitly or implicitly -- in a previous decision of the same court or a higher court. Hall v. City of L.A., 697 F.3d 1059, 1067 (9th Cir. 2012). As the Ninth Circuit recently explained, the doctrine of the law of the case "is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law

8

has changed, or when applying the doctrine would be unjust." Stacy v. Colvin, 825 F.3d 563, 567 (9th Cir. 2016). The Ninth Circuit held in Stacy that the law of the case doctrine applies in the Social Security context.[9] Id.

Defendant does not argue that the evidence on remand is substantially different, that the controlling law has changed (other than conceding that pursuant to Stacy, the law of the case doctrine and rule of mandate apply to social security cases remanded from federal court [JS at 8]), or that applying the law of the case doctrine would be unjust. [See generally id. at 8-9.] Instead, defendant argues that the ALJ complied with the Court's remand order because he did "not disrupt" the step four finding of the 2013 Decision, and he reassessed the RFC. Defendant contends that Court's remand order did not explicitly or, presumably, implicitly, preclude the ALJ from reconsidering physical as well as mental impairments.

Plaintiff argues that in Stacy -- unlike here -- the Ninth Circuit found the law of the case doctrine had not been violated because new evidence had been presented about the claimant's previous job duties that was substantially different on remand. [Id. at 9.] Plaintiff asserts that by affirming the finding in the 2013 Decision that plaintiff's past relevant work was precluded by the sedentary residual functional capacity determination, this Court impliedly precluded the ALJ in the 2018 Decision from changing plaintiff's physical RFC. [Id. at 9-10.]

The law of the case applies both to issues decided explicitly "or by necessary implication" in a prior decision. Hall, 697 F.3d at 1067. Further, unless "the evidence on remand is substantially different," the law of the case doctrine precludes revisiting prior rulings. Stacy, 825 F.3d at 567. In Stacy, the Ninth Circuit specifically observed that an ALJ's prior step four finding -- although not explicitly ruled upon by the district court -- is the type of determination that is normally *not* reconsidered pursuant to the law of the case. Id. However, in Stacy, the Ninth Circuit found that new evidence was introduced for the first time on remand, which called into question the prior step four findings regarding the scope of the duties performed by plaintiff in his past relevant work.

---

[9] As noted by plaintiff, this Court's remand order was issued prior to the Ninth Circuit's decision in Stacy, but the ALJ's 2018 Decision "was clearly rendered after *Stacy* became law of the circuit." [JS at 7.]

Id. Thus, under those circumstances, the law of the case doctrine did not preclude the ALJ from revisiting the step four finding.

Here, the ALJ explicitly stated at the outset of the hearing that he was "hearing this case on first impression" and was "not bound by the previous determination[]." [AR at 509, 510 (emphasis added).] Plaintiff immediately objected, stating the following:

> This is a step five case, Your Honor. We *start with* the physical residual functional capacity that Judge Harrell found *which is a sedentary RFC*. The Court remanded to assess the mental impairments[,] in particular social functioning and concentration, persistence, and pace. There is some evidence that [plaintiff's] condition remains similar to what it was that Judge Harrell adjudicated. She lacks now the capacity to do prolonged sitting under the most recent physical consultative examination.[10] She also has impaired ability at least through the date of the prior ALJ decision in terms of working with supervisors, coworkers, and the public. Those would significantly erode the ability to perform work at any level of exertion much less the sedentary level of exertion. Currently she -- looks like she's limited based on her functioning status, tested in the borderline range to something in the range of one to two-step instructions.

[Id. at 511 (emphases added).]

The Court agrees with plaintiff. At *every* step of this Court's remand order, the Court made it implicitly clear -- if not explicitly -- that the ALJ was limited to reassessing plaintiff's RFC "*in light of*" his reconsideration of plaintiff's *mental* impairments including (1) her mild to moderate impairment in concentration, persistence, and pace; (2) her assessed difficulties in interactions with her supervisors, coworkers, or the general public, and difficulties in withstanding the stress and changes associated with an eight-hour workday as described in the reports of Dr. Campbell, Dr. Varghese, Hillary Weiss, Ph.D., and Keith Shillito, M.D.; and (3) assessing whether, "*given plaintiff's RFC*" as revised to include any *mental* limitations in concentration, persistence, and pace, and social functioning, she was precluded from performing jobs existing in significant numbers in the national economy.[11]

---

[10] In violation of the Court's Order limiting the ALJ on remand to consideration of plaintiff's mental limitations, the ALJ ordered a physical consultative examination.

[11] The Court's intent was that the RFC determination in the 2013 Decision would *not* be changed in any manner (including the RFC limitation to simple, repetitive tasks) other than with respect to additional mental limitations assessed on remand, if any, relating to plaintiff's
(continued...)

Absent some explanation from the ALJ as to why the law of the case should not be applied -- in other words, explaining why it was "necessary" to revise the findings of the previous ALJ's physical and mental RFC determination in a way adverse to plaintiff -- the ALJ violated the law of the case.

### 2. Rule of Mandate

The Ninth Circuit described the rule of mandate as follows:

> "The rule of mandate is similar to, but broader than, the law of the case doctrine." United States v. Cote, 51 F.3d 178, 181 (9th Cir. 1995). The rule provides that any "district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." Hall, 697 F.3d at 1067. The district court may, however, "decide anything not foreclosed by the mandate." Id. But the district court commits "jurisdictional error" if it takes actions that contradict the mandate. See id.

Stacy, 825 F.3d at 567-68 (footnote omitted) (noting that the rule of mandate applies in the social security context). The Stacy court noted that district courts are allowed to reexamine any issue on remand that is not inconsistent with the mandate. Id. at 568. In this case, the Court mandated that the RFC be reassessed with respect to plaintiff's *mental health* impairments and limitations; it was not broad enough to permit the ALJ to revisit the physical sedentary finding of the 2013 Decision, or even the assessed mental limitation to simple, repetitive tasks. Thus, the ALJ's procurement of a new physical consultative examination and reexamination of plaintiff's sedentary RFC assessment violated the rule of mandate.

### B. ASSESSMENT OF MENTAL HEALTH IMPAIRMENT AND LIMITATIONS

This Court's remand order directed the ALJ on remand to consider the reports of Dr. Campbell [AR at 414-18], Dr. Varghese [id. at 424-41], Dr. Weiss [id. at 446-47], and Dr. Shillito [id. at 480-81], and consider the effect, if any, of plaintiff's assessed difficulties in interacting with supervisors, coworkers, or the general public, or of plaintiff's difficulties in withstanding the stress

---

[11](...continued)
concentration, persistence and pace, social functioning, and difficulties in withstanding stress and changes in the work environment.

and changes associated with an eight-hour workday and day-to-day work activities, on plaintiff's RFC. [Id. at 603.] With respect to plaintiff's mental health impairments, the ALJ determined in the 2018 Decision that plaintiff had the severe impairments of an adjustment disorder with anxiety, depressed mood, and an "unspecified neurocognitive disorder." [Id. at 488.]

In brief, and as discussed by plaintiff [JS at 10-16], the ALJ summarized the following evidence: (1) the ALJ gave partial weight to the February 23, 2012, report of Dr. Campbell, who "assumed no psychological records and no mental health treatment," but failed to mention Dr. Campbell's examination observations of moderate distress, a tense affect, and that plaintiff appeared anxious at times with a congruent mood [AR at 417]; (2) the June 6, 2015, psychological evaluation of John Mather, Ph.D., who determined that the fact that plaintiff could recall one of three objects after a four-minute delay was indicative of possible inconsistencies between auditory working memory and memory recall [id. at 927]; (3) the July 7, 2016, psychological evaluation of Heather Nash, Ph.D., who did not review any of plaintiff's records [id. at 969], and observed plaintiff's stiff posture and difficulties with ambulation, noted that plaintiff was unable to spell the word "world" backwards, and who assessed plaintiff in the borderline intellectual functioning range with a full-scale IQ of 78, with borderline range of memory functioning, impaired functioning in her ability to understand, impaired on assessment of memory and learning, impaired concentration, and moderate impairment in her ability to understand and remember simple instructions and carry out complex instructions [id. at 973-77]; (4) Dr. Shillito's October 2016 assessment of plaintiff's ability to perform the mental requirements of work activity, which found marked limitations in the ability to understand, remember, and carry out detailed instructions, and make judgments on complex work-related decisions; moderate limitations in the ability to make judgments on simple work-related decisions; marked limitations in maintaining attendance and punctuality, performing at a consistent pace, interacting with the public, sustaining an ordinary routine without special supervision, responding appropriately to changes in a routine work setting; and moderate limitations in plaintiff's ability to interact with supervisors and coworkers [id. at 999-1003]; (5) Dr. Shillito's September 2013 assessment, which reflected moderate limitations in plaintiff's ability to understand, remember, and carry out detailed instructions and make judgments on complex work-

related decisions [id. at 480-81]; (6) the March 26, 2012, psychiatric review technique form completed by Dr. Varghese on reconsideration, in which Dr. Varghese found evidence of a sleep disturbance, difficulty concentrating or thinking, moderate restrictions in daily living activities, and moderate difficulties in maintaining social functioning [id. at 428-41]; (7) Dr. Varghese's March 26, 2012, mental residual functional capacity assessment in which she noted marked limitations in understanding, remembering, and carrying out detailed instructions, and interacting with the public, and suggested an RFC assessment that included the ability to relate to supervisors and peers on a superficial work basis and no contact with the public [id. at 424-26]; and (8) the June 2012 review of the record conducted by Dr. Weiss, who found that plaintiff reported some depressive symptoms, difficulty with concentration and memory problems, and social withdrawal, and noted plaintiff's anxious affect on mental status examination, affirming Dr. Varghese's findings of plaintiff being capable of simple tasks with low public contact. [Id. at 447.]

Plaintiff contends that although the Court directed the ALJ on remand to consider, weigh, and assess plaintiff's ability to engage in the mental requirements of work based on the reports of Dr. Campbell, Dr. Varghese, Dr. Weiss, and Dr. Shillito, the ALJ did not properly consider the opinions of Dr. Varghese or Dr. Weiss regarding plaintiff's limitation to simple repetitive tasks, superficial ability to interact with coworkers and supervisors, and limited or no interaction with the public. [JS at 15 (citing AR at 426, 446-47).] She also argues that the ALJ improperly described Dr. Campbell's findings as "unremarkable"; failed to address Dr. Nash's narrative explanation of impairment with respect to simple one- and two-step instructions; and failed to articulate specific and legitimate reasons supported by substantial evidence to reject Dr. Shillito's opinions about plaintiff's chronic pain causing depression and disrupting her ability to perform the mental requirements of work activity. [Id. at 16-18.]

Defendant responds that the ALJ was entitled to afford Dr. Campbell's opinion partial weight because, as the ALJ found, Dr. Campbell's examination of plaintiff was "fairly unremarkable." [Id. at 16.] Defendant notes that the ALJ gave Dr. Mather's opinion partial weight and assessed *more* restrictive limitations than those opined by Dr. Mather; that Dr. Nash's opinion was consistent with treatment records and the evidence as a whole; and that Dr. Shillito's

13

observations were not supported by his own progress notes and observations. [Id. 18-20.] Defendant also argues that the ALJ specifically addressed the opinions of Dr. Varghese and Dr. Weiss and gave them great weight, "particularly regarding the assessment that Plaintiff could perform a range of light exertion work along with simple tasks." [Id. at 20-21 (citations omitted).] Defendant contends that plaintiff failed to explain how the mental limitations assessed by the ALJ "did not accommodate those opined by the medical sources of record in light of the weight that the ALJ accorded to their opinions." [Id. at 21.]

Plaintiff replies that simply "[a]ssigning weight does not explain the basis for the opinions expressed." [Id.] She contends that the 2018 Decision suffers from the same inadequacies identified previously by the Court in the 2013 Decision and, although the ALJ assigned "great weight" to the opinions of Dr. Varghese and Dr. Weiss, he nevertheless ignored Dr. Varghese's limitation (affirmed by Dr. Weiss) to superficial interaction with supervisors and peers, and little to no interaction with the public, instead finding that plaintiff could *frequently* interact with supervisors, coworkers, *and* the public. Plaintiff argues that the ALJ's rejection of those limitations was not accompanied by any explanation and demonstrates that the ALJ "substituted his judgment for matters of professional consideration without expert opinion." [Id. at 22.]

While an ALJ is not required to address all evidence presented to him, he must explain why significant and probative evidence has been rejected. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation omitted). "[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that . . . [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

Here, the ALJ did not specifically identify the evidence that he believed failed to support the social limitations addressed by Dr. Varghese and Dr. Weiss.[12] Although he reviewed the

---

[12] The three alternative occupations the ALJ found plaintiff would be able to perform are all categorized by the DOT as reasoning level 2 occupations. Reasoning level 2 may be consistent with a limitation to simple, repetitive tasks. See, e.g., Meissl v. Barnhart, 403 F. Supp. 2d 981, 984 (C.D. Cal. May 25, 2005). Unlike the RFC determination in the 2013 Decision, however, the
(continued...)

opinion of Dr. Nash, who "asserted there were no social limitations" (the only opinion he mentioned in his 2018 Decision that made this finding), and gave Dr. Nash's opinion "some weight," the ALJ failed to mention that Dr. Nash had no records to review. [AR at 494, 969.]

Because the ALJ failed to provide an explanation as to why significant and probative evidence regarding plaintiff's ability to interact with supervisors, coworkers, and the public was completely ignored, substantial evidence did not support his RFC determination that plaintiff was capable of frequent interactions with supervisors, coworkers, and the general public.

### C. ASSESSMENT OF PHYSICAL IMPAIRMENTS

Plaintiff asserts that if the Court "does not otherwise impose the rule of mandate and law of the case," it should find that the ALJ failed to properly consider the sitting, standing, and walking limitations suggested by Justin Garrison, D.O. and Dr. Shillito. [JS at 22-24, 26.] She also notes that Dr. Garrison opined that plaintiff could occasionally use her right hand for reaching, handling, fingering, feeling, pushing and pulling, because of her right elbow tendinitis, which was supported by his examination, which found "[m]ild tenderness at right lateral epicondyle but no severe pain with pronation and supination with resistance." [Id. at 23 (citing AR at 986-87, 1015).] She notes (without citation) that plaintiff's history of tendinitis or epicondylitis "is independently documented in the record." [Id.]

Because the Court has found that the rule of mandate and law of the case doctrine apply on remand, no further discussion on this issue is necessary.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). Where no useful purpose would be served by

---

[12](...continued)
ALJ in the 2018 Decision did not *specifically* find a limitation to simple repetitive tasks. [AR at 491.] He gave no explanation for not including that limitation.

further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall review the medical evidence of record relating to plaintiff's mental impairments and limitations, including, but not limited to, the reports of Dr. Campbell, Dr. Varghese, Dr. Weiss, and Dr. Shillito, and consider the effect, if any, of plaintiff's assessed difficulties in concentration, persistence, and pace; interacting with supervisors, coworkers, and/or the general public; and withstanding the stress and changes associated with an eight-hour workday and day-to-day work activities, on plaintiff's RFC as set forth in the 2013 Decision.[13] If the ALJ rejects these findings, the ALJ shall explain why significant and probative evidence was rejected. Second, with the assistance of a vocational expert, if necessary, the ALJ shall determine whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform given her RFC,[14] including her difficulties in concentration, persistence, and pace, limitations in social functioning, and limitations in her ability to withstand the stress and changes associated with an eight-hour workday and day-to-day activities.

---

[13] To be clear, nothing herein is intended to disrupt the 2013 Decision's RFC determination that plaintiff is capable of no more than sedentary work. Furthermore, the ALJ on remand shall determine *only* whether *additional* limitations are warranted based on his or her reassessment of plaintiff's *mental* impairments and limitations, as set forth herein. Nothing herein is intended to disrupt the 2013 Decision's RFC determination -- whether with respect to mental or physical limitations -- in a manner *adverse* to plaintiff.

[14] Nothing herein is intended to disrupt the 2013 Decision's step four finding that plaintiff is unable to return to her past relevant work.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 8, 2019

  /s/ Paul L. Abrams
 PAUL L. ABRAMS
 UNITED STATES MAGISTRATE JUDGE